**SEYFARTH SHAW LLP**
Eric E. Hill (SBN 173247)
ehill@seyfarth.com
Ping Wang (SBN 351428)
pwang@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105-2930
Telephone:   (415) 397-2823
Facsimile:    (415) 397-8549

Leo Q. Li (SBN 293539)
lli@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:   (310) 277-7200
Facsimile:    (310) 201-5219

Attorneys for Defendants
IHG MANAGEMENT (MARYLAND) LLC;
INTER-CONTINENTAL HOTELS
CORPORATION; INTERCONTINENTAL
HOTELS GROUP RESOURCES, LLC

## UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT MARTINEZ, individually, and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>IHG MANAGEMENT (MARYLAND) LLC, a Maryland Limited Liability Company; INTER-CONTINENTAL HOTELS CORPORATION, a Delaware Corporation; INTERCONTINENTAL HOTELS GROUP RESOURCES, LLC, a Delaware Limited Liability Company; and DOES 1-100, inclusive,<br><br>Defendants. | **CLASS ACTION**<br><br>Case No. **'24CV0210 L    DEB**<br><br>**DEFENDANTS' NOTICE OF REMOVAL TO UNITED STATES DISTRICT COURT**<br><br>[San Diego County Superior Court Case No. 37-2023-00056196-CU-OE-CTL]<br><br>[*Filed concurrently with:*<br>*1.  Civil Cover Sheet (JS44);*<br>*2.  Notice of Party With Financial Interest;*<br>*3.  Corporate Disclosure Statement;*<br>*4.  Declaration of Kristin Uribe;*<br>*5.  Proof of Service]*<br><br>Complaint Filed: 12/28/2023<br>Trial Date:  None Set |

308023391v.5

**TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants IHG Management (Maryland) LLC ("IHGM"), Inter-Continental Hotels Corporation ("ICHC"), and InterContinental Hotels Group Resources, LLC ("IHGR") (collectively "Defendants") file this Notice of Removal, asserting federal jurisdiction under 1) the Class Action Fairness Act of 2005 ("CAFA") pursuant to 28 U.S.C. §§ 1332(d), 1441(a), 1446, and 1453, and 2) 28 U.S.C. §§ 1331, 1441(a), and 1446 based on federal question jurisdiction, to effectuate the removal of the above-captioned action, which was originally commenced in the Superior Court of the State of California for the County of San Diego, to the United States District Court for the Southern District of California.  This Court has original jurisdiction over the action pursuant to CAFA and federal question jurisdiction for the following reasons:

## I.    BACKGROUND

1.    On December 28, 2023, Plaintiff Robert Martinez ("Plaintiff") filed a class action complaint in the Superior Court of California for the County of San Diego, titled "*Robert Martinez, v. IHG Management (Maryland) LLC, a Maryland Limited Liability Company; Inter-Continental Corporation, a Delaware Corporation; InterContinental Hotels Group Resources, LLC, a Delaware Limited Liability Company; and Does 1-100, inclusive*," Case No. 37-2023-00056196-CU-OE-CTL ("Complaint").  The Complaint asserts eight causes of action for (1) Unpaid Minimum Wages and Liquidated Damages under California Labor Code §§ 1194 and 1194.2; (2) Unpaid Overtime Wages under California Labor Code §§ 510 and 1194; (3) Failure to Provide Meal Periods in Violation of California Labor Code §§ 226.7; (4) Failure to Provide Rest Periods in Violation of California Labor Code §§ 226.7; (5) Failure to Furnish Accurate Itemized Wage Records in Violation of California Labor Code §§ 226(e) and 226(h); (6) Failure to Timely Pay All Wages Due Upon Separation of Employment in violation of California Labor Code §§ 203; (7) Failure to Reimburse Business Expenses in Violation of California Labor

1

308023391v.5

Code §§2802; and (8) Unfair Business Practices in Violation of California Business and Professions Code §§ 17200 *et seq*.

2.    On January 16, 2024, each Defendant was personally served with an identical copy of the Summons and Complaint, Civil Case Cover Sheet, Notice of Case Assignment and Case management Conference (Civil), Notice of Case Reassignment, Minute Order, Alternative Dispute Resolution (ADR) Information, Stipulation to Use Alternative Dispute Resolution (ADR), Plaintiff's Peremptory Challenge of The Honorable Keri Katz, and Declaration of Zachary M. Crosner, through their registered agent for service of process in California. A true and correct copy of the service packets received by Defendants is attached hereto as **Exhibit A**.

3.    On February 13, 2024, Defendants filed their Answer to Plaintiff's Unverified Class Action Complaint in the Superior Court of California for the County of San Diego. A true and correct copy of the Answer filed to Plaintiff's Complaint is attached hereto as **Exhibit B**.

4.    Defendants have not filed or received any other pleadings or papers, other than the pleadings described as Exhibits A and B, in this action prior to filing this Notice of Removal.

## II.    TIMELINESS OF REMOVAL

5.    Notice of removal is timely if it is filed within 30 days after the service of the complaint or summons—"The notice of removal . . . shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant . . . ." 28 U.S.C. §1446(b)(1).

6.    The service of process which triggers the 30-day period to remove is governed by state law.  *Whidbee v. Pierce Cty.*, 857 F.3d 1019, 1023 (9th Cir. 2017) ("When a case is removed from state court to federal court, the question whether service of process was sufficient prior to removal is governed by state law."); *City of Clarksdale*

2

1   *v. BellSouth Telecommunications, Inc.*, 428 F.3d 206, 210 (5th Cir. 2005) ("Although

2   federal law requires the defendant to file a removal motion within thirty days of service,

3   the term 'service of process' is defined by state law.").

4        7.    Here, Defendants were served with copies of Summons and Complaint,

5   through their registered agent for service of process in California on January 16, 2024.

6   Defendants filed their Notice of Removal on February 15, 2024, which is within 30 days

7   of service of the Summons and Complaint. Therefore, Defendant's Notice of Removal is

8   timely.

9   **III.    REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT**

10       8.    Under the CAFA, district courts have original jurisdiction for class actions

11  "if [1] the class has more than 100 members, [2] the parties are minimally diverse, and

12  [3] the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co.,*

13  *LLC v. Owens* ("*Dart*"), 135 S. Ct. 547, 552 (2014) (citing 28 U.S.C. § 1332(d)(2),

14  (5)(B)). As set forth below, each of these three requirements are met and thus this action

15  is properly removable, pursuant to 28 U.S.C. § 1441(a).

16       **A.    The Class Action Includes Approximately 4,068 Potential Class
         Members.**

17       9.    A removal under CAFA requires at least 100 members in a proposed class.

18  *See* 28 U.S.C. § 1332(d)(5)(B) (providing that CAFA jurisdiction does not apply to any

19  class action in which "the number of members of all proposed plaintiff classes in the

20  aggregate is less than 100").

21       10.   Here, Plaintiff defined the proposed class to include "[a]ll current and

22  former non-exempt employees that worked either directly or via a staffing agency for any

23  one or more of the DEFENDANTS at any location in California at any time within the

24  four years prior to the filing of the initial Complaint …." (Ex. A—Complaint, ¶ 17.)

25  Based on the filing date of the Complaint on December 28, 2023, the proposed class

26  period covers the time period of **December 28, 2019 to the present**.

27

28

3

1

11.    Based on the proposed class definition, **there are approximately 4,068**

2  **current and former non-exempt employees in the proposed class between December**

3  **28, 2019 and the present**.[1]  (Declaration of Kristin Uribe  ("Uribe Declaration"), ¶ 6.)

4  Indeed, Plaintiff concedes that the class size exceeds 100 members—"PLAINTIFF is

5  informed and believes the Class consists of at least 100 individuals."  (Ex. A—

6  Complaint, ¶ 17.)  Thus, there is no question that the size of the proposed class far

7  exceeds the minimum threshold of 100 members under CAFA.

8      **B.    Plaintiff And Defendants Are Minimally Diverse.**

9

12.    CAFA requires only minimal diversity for the purpose of establishing

10  federal jurisdiction—that is, at least one purported class member must be a citizen of a

11  state different from any named defendant.  28 U.S.C. § 1332(d)(2)(A) ("any member of a

12  class of plaintiffs is a citizen of a State different from any defendant.").

13

13.    A party's citizenship is determined at the time the lawsuit was filed.  *In re*

14  *Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1236 (9th Cir. 2008) ("[T]he

15  jurisdiction of the court depends upon the state of things at the time of the action [was]

16  brought.").

17

14.    In the instant case, Plaintiff is a citizen of a state (California) that is different

18  from the states of citizenship of Defendant IHGM (Maryland and Georgia), one of the

19  named Defendants.

20      **1.    Plaintiff Is A Citizen Of California.**

21

15.    For diversity purposes, a natural person's state citizenship is determined by

22  that person's domicile—*i.e.*, one's "permanent home, where [that person] resides with the

23  intention to remain or to which [that person] intends to return."  *Kantor v. Warner-*

24  *Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001); *Armstrong v. Church of Scientology*

25  *Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) ("For purposes of diversity jurisdiction, an

26

27
_____

28  [1] Defendant ICHC did not employ any non-exempt employees in California, and did not
manage any hotels in California, during the class period. (Uribe Declaration, ¶ 3.)

4

individual is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed").

16.     In this case, Plaintiff alleges that he is a citizen of California. (*See* Ex. A—Complaint, ¶2.)  Specifically, the Complaint alleges that Plaintiff "is, and at all relevant times, was an individual domiciled in the State of California and a citizen of the State of California." (Ex. A—Complaint, ¶ 2.)

17.     Additionally, Plaintiff provided Defendant IHGM with his home address during the course of his employment for purposes of his personnel files, payroll checks, and tax withholdings.  (Uribe Declaration, ¶ 4.)  Defendant IHGM's review of Plaintiff's personnel files reveal that throughout the period of his employment, Plaintiff was a resident of California.  (*Id.*)

18.     Plaintiff's intent to remain domiciled in California also is evident from the fact that he brought this lawsuit against Defendants in the Superior Court of the State of California for the County of San Diego.  Therefore, Plaintiff was at all relevant times, and still is, a citizen and resident of the State of California.

### 2.     Defendant IHGM Is Not A Citizen Of California, But Rather Is A Citizen of Maryland and Georgia.

19.     Defendant IHGM is, and was at the time of the filing of this action, a citizen of a state other than California within the meaning of 28 U.S.C. § 1332(c)(1).

20.     For diversity purposes, a corporation is deemed a citizen of the state "by which it has been incorporated" and of the state "where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

21.     Defendant IHGM is now, and ever since this action commenced has been, a Maryland Limited Liability Company, organized under the laws of the State of Maryland. (Uribe Declaration, ¶ 7.)  Thus, for purposes of diversity jurisdiction, Defendant IHGM is a citizen of Maryland.

22.     Further, as shown below, Defendant IHGM's principal place of business is, and has been at all times since this action commenced, located in the State of Georgia.

(Uribe Declaration, ¶ 8.)  Thus, for purposes of diversity jurisdiction, Defendant IHGM is also a citizen of Georgia.

23.    The United States Supreme Court held that when determining a corporation's principal place of business for diversity purposes, the appropriate test is the "nerve center" test.  *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81, 92–93 (2010).  Under the "nerve center" test, the "principal place of business" means the corporate headquarters where a corporation's high level officers direct, control and coordinate its activities on a day-to-day basis.  *Id*. at 92–93 ("We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities"); *see also Industrial Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092–93 (9th Cir. 1990) (holding that the "nerve center" is where "its executive and administrative functions are performed").

24.    Under the "nerve center" test, Georgia emerges as Defendant IHGM's principal place of business.  Defendant IHGM's corporate headquarters are located in Atlanta, Georgia, where Defendant IHGM's high-level officers direct, control, and coordinate its activities.  (Uribe Declaration, ¶ 8.)  Defendant IHGM's high-level corporate officers maintain offices in Atlanta, and many of Defendant's corporate-level functions are performed in the Atlanta office.  (*Id.*)  Additionally, many of Defendant's executive and administrative functions, including corporate finance and accounting, are directed from the Atlanta headquarters.  (*Id.*) IHGM's sole member is InterContinental Hotels Group Resources, Inc., a Delaware corporation with its principal place of business in Atlanta, Georgia. InterContinental Hotels Group Resources, Inc.'s corporate officers maintain offices in Georgia, and a majority of its corporate officers and directors work from its headquarters in Georgia. (*Id.*)

25.    Therefore, for purposes of diversity of citizenship, Defendant IHGM is, and has been at all times since this action commenced, a citizen of the State of Maryland and the State of Georgia.  28 U.S.C. § 1332(c)(1).

DEFENDANTS' NOTICE OF REMOVAL

308023391v.5

1    26.    Because Plaintiff is a citizen of California and Defendant IHGM, one of the

2    named Defendants, is a citizen of Maryland and Georgia, minimal diversity exists for

3    purposes of CAFA.

4    **3.    The Citizenship Of Doe Defendants Should Be Disregarded.**

5    27.    The other defendants named in the Complaint are merely fictitious parties

6    identified as "DOES 1-100" whose citizenship shall be disregarded for purposes of this

7    removal.  28 U.S.C. § 1441(b) (for purposes of removal, "the citizenship of defendants

8    sued under fictitious names shall be disregarded"); *see also Soliman v. Philip Morris,*

9    *Inc.*, 311 F. 3d 966, 971 (9th Cir. 2002) ("citizenship of fictitious defendants is

10    disregarded for removal purposes and becomes relevant only if and when the plaintiff

11    seeks leave to substitute a named defendant"); *Fristoe v. Reynolds Metals Co.*, 615 F.2d

12    1209, 1213 (9th Cir. 1980) ("[T]he unknown defendants sued as 'Does' need not be

13    joined in a removal petition.") (citing *Ronson Art Metal Works, Inc. v. Hilton Lite Corp.*,

14    111 F.Supp. 691, 694 (N.D. Cal. 1953)).

15    28.    Thus, the existence of "DOES 1-100" in the Complaint does not deprive this

16    Court of jurisdiction.  *Abrego v. Dow Chemical Co.*, 443 F.3d 676, 679–80 n.4 (9th Cir.

17    2006) (rule applied in CAFA removal; "[f]or purposes of removal under this chapter, the

18    citizenship of defendants sued under fictitious names shall be disregarded").

19    **C.    The Amount In Controversy Exceeds The $5 Million Statutory Threshold Under CAFA.**

20    29.    CAFA requires that the amount in controversy exceed $5 million, exclusive

21    of interest and costs.  28 U.S.C. § 1332(d)(2).  Under CAFA, the claims of the individual

22    members in a class action are aggregated to determine if the amount in controversy

23    exceeds the sum or value of $5,000,000.  28 U.S.C. § 1332(d)(6).

24    30.    In addition, Congress intended for federal jurisdiction to be appropriate

25    under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the

26    viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of

27    relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)."  Senate Judiciary

28

DEFENDANTS' NOTICE OF REMOVAL

Committee Report, S. Rep. No. 109-14, at 42 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 40.

31.    The Senate Judiciary Committee's Report on the final version of CAFA also makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. *Id*. at 42–43 ("if a federal court is uncertain about whether 'all matters in controversy' in a purposed class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . .  Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provision should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

32.    Here, even if the Complaint does not allege an amount in controversy, the removing defendant only needs to prove by a **preponderance of the evidence** that the amount in controversy exceeds that minimum. *Ramos v. MOOG Inc.*, 2020 WL 969023, at *3 (C.D. Cal. Feb. 27, 2020) (applying preponderance of evidence standard to deny motion to remand where plaintiff's class action complaint makes conclusory allegation that the "aggregate claim is under five million dollars"); *see also Dart*, 135 S. Ct. at 553–54 ("Removal is proper on the basis of an amount in controversy asserted by the defendant if the district court finds, by the **preponderance of the evidence**, that the amount in controversy exceeds the jurisdictional threshold") (emphasis added, internal alterations omitted); *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) ("A defendant seeking removal of a putative class action must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum."); *accord Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged.  In light of *Standard Fire*, this

8

308023391v.5

1  rule is not altered even if plaintiffs affirmatively contend in their complaint that damages
2  do not exceed $5 million.") (citations omitted); *Sanchez v. Monumental Life Ins. Co.*, 102
3  F.3d 398, 404 (9th Cir. 1996) (holding that under the "preponderance of the evidence"
4  standard, "the defendant must provide evidence establishing that it is 'more likely than
5  not' that the amount in controversy exceeds that amount"); *Schiller v. David's Bridal,*
6  *Inc.*, 2010 WL 2793650, at *2 (E.D. Cal. July 14, 2010) (same).

7      33.    To satisfy this standard, the "defendants' notice of removal need include
8  **only a plausible allegation** that the amount in controversy exceeds the jurisdictional
9  threshold." *Dart*, 135 S. Ct. at 554 (emphasis added); *see also Arias v. Residence Inn by*
10  *Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("Because some remnants of our former
11  antiremoval presumption seem to persist, we reaffirm three principles that apply in
12  CAFA removal cases.  First, a removing defendant's notice of removal 'need not contain
13  evidentiary submissions' but **only plausible allegations** of the jurisdictional elements";
14  "An assertion that the amount in controversy exceeds the jurisdictional threshold is not
15  defeated merely because it is equally possible that damages might be 'less than the
16  requisite . . . amount'") (emphasis added).

17      34.    The burden of establishing the jurisdictional threshold "is not daunting, as
18  courts recognize that under this standard, a removing defendant is not obligated to
19  research, state, and prove the plaintiff's claims for damages."  *Korn v. Polo Ralph Lauren*
20  *Corp.*, 536 F.Supp.2d 1199, 1204–05 (E.D. Cal. 2008) (internal quotations omitted); *see*
21  *also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need
22  not predict the trier of fact's eventual award with one hundred percent accuracy").

23      35.    For purposes of ascertaining the amount in controversy, "the court must
24  accept as true plaintiff's allegations as plead in the Complaint and assume that plaintiff
25  will prove liability and recover the damages alleged."  *Muniz v. Pilot Travel Ctrs. LLC*,
26  2007 WL 1302504, *3 (E.D. Cal. May 1, 2007) (denying motion for remand of a class
27  action for claims under the California Labor Code for missed meal and rest periods,
28  unpaid wages and overtime, inaccurate wage statements, and waiting-time penalties).

DEFENDANTS' NOTICE OF REMOVAL

36.     As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez*, 372 F.3d at 1117; *see also Rodriguez*, 728 F.3d at 981 (holding that the ordinary preponderance of the evidence standard applies even if a complaint is artfully pled to avoid federal jurisdiction); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 702 (9th Cir. 2007) (holding that even if a plaintiff affirmatively pled damages less than the jurisdictional minimum and did not allege a sufficiently specific total amount in controversy, the removing defendant is still only required to show by a preponderance of evidence that the amount in controversy exceeds the jurisdictional threshold).

37.     If a plaintiff asserts statutory violations, **the court must assume that the violation rate is 100%** unless the plaintiff specifically alleges otherwise:

> As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations.  Plaintiff is the "master of [her] claim[s]," and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.  She did not.

*Muniz*, 2007 WL 1302504, at *4 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also Wheatley v. MasterBrand Cabinets*, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) ("Defendant and the Court must rely on assumptions regarding the rate of the alleged violations . . . Plaintiff does not allege that some putative class members were subject to distinct policies. The Court therefore finds the assumption that uniform . . . policies were applied to **all** putative class members reasonable") (emphasis added); *Soratorio v. Tesoro Ref. and Mktg. Co., LLC*, 2017 WL 1520416, at *3 (C.D. Cal. Apr. 26, 2017) ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate.  The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendant's 'common practice.'  It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Arreola v.*

10

*The Finish Line*, 2014 WL 6982571, *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), *aff'd sub nom. Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation").

38.    Numerous other District Courts have similarly concluded that alleging a policy of noncompliance in a complaint justifies the assumption of a 100 percent violation rate.  *See Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice—or other similar language—and where the plaintiff offers no evidence rebutting this violation rate"); *Torrez v. Freedom Mortg., Corp.*, 2017 WL 2713400, at *3–5 (C.D. Cal. June 22, 2017) (where complaint alleged "FMC engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees within the state of California," the complaint "can reasonably be interpreted to imply nearly 100% violation rates"); *Feao v. UFP Riverside, LLC*, 2017 WL 2836207, at *5 (C.D. Cal. June 26, 2017) ("Plaintiff's allegations contain no qualifying words such as 'often' or 'sometimes' to suggest less than uniform violation that would preclude a 100 percent violation rate."); *Soratorio*, *LLC*, 2017 WL 1520416, at *3 ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate. The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendants' 'common practice.'  It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that

11

Defendants had a 'common practice' of failing to provide required breaks."); *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d. 1025, 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendants to assume a 100% violation rate – especially since Plaintiffs offer no alternative rate to challenge Defendant's calculations."); *Jones v. Tween Brands, Inc.*, 2014 WL 1607636, at *3 (C.D. Cal. Apr. 22, 2014) (using 100 percent violation rate for waiting-time penalties since the complaint did not limit the number or frequency of violations).

39.    In this case, Plaintiff seeks to recover, on behalf of himself and the alleged class, alleged unpaid minimum wages and liquidated damages, alleged unpaid overtime wages, and alleged damages and penalties related to their claims of failure to provide meal breaks, failure to provide rest breaks, failure to provide accurate itemized wage statements, failure to timely pay all wages due upon separation of employment, unreimbursed business expenses, and unfair competition.  (Ex. A—Complaint at ¶¶ 95-159.)  Plaintiff also seeks attorneys' fees and costs.  (Ex. A—Prayer For Relief.)

40.    As set forth below, the alleged amount in controversy, implicated by the classwide allegations, exceeds **$30 Million**, even under conservative violation rates.  All calculations supporting the amount in controversy are based on the Complaint's allegations, assuming, without any admission of the truth of the facts alleged and solely for purposes of this Notice of Removal, that liability is established.

**1.    The Third Cause Of Action For Unpaid Meal Period Premiums: The Amount In Controversy Exceeds $5,208,850.00 Based On One Violation Per Employee Per Two-Week Period.**

41.    For Plaintiff's third cause of action, Plaintiff alleges that "PLAINTIFF and other Class Members were consistently unable to take timely, off duty, thirty-minute, uninterrupted first and second meal periods, often being forced to take late meal periods, interrupted meal periods, and/or work through part or all of their meal periods due to understaffing, the nature and constraints of their job duties, and/or commentary from

DEFENDANTS' NOTICE OF REMOVAL

308023391v.5

1    supervisors pressuring them to take non-compliant meal periods or skip meal periods

2    completely." (Ex. A—Complaint, ¶ 112.)

3        42.    As a result of Plaintiff's allegations, he claims that "PLAINTIFF and the

4    Class Members are entitled to one additional hour's pay at the employee's regular rate of

5    compensation for each day a meal period was missed, late, interrupted, or otherwise

6    unlawful …." (Ex. A—Complaint, ¶ 117.)

7        43.    California law provides that "[a]n employer may not employ an employee

8    for a work period of more than five hours per day without providing the employee with a

9    meal period of not less than 30 minutes . . . ." Cal. Lab. Code § 512.  Section 512 further

10    provides that "[a]n employer may not employ an employee for a work period of more

11    than 10 hours per day without providing the employee with a second meal period of not

12    less than 30 minutes . . . ." California Labor Code § 226.7 requires employers to pay an

13    extra hour's pay to employees who are not provided full or timely meal periods. An

14    employee is entitled to an additional hour's wages per day, for both a rest and meal

15    period violation each day. *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, *4 (N.D. Cal.

16    Apr. 29, 2010) (noting that California Labor Code § 226.7 provides recovery for one

17    meal break violation per work day and one rest break violation per work day).

18        44.    The statute of limitations for recovery for meal period premium pay under

19    California Labor Code § 226.7 is three years. *Murphy v. Kenneth Cole Prods.*, Inc., 40

20    Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7

21    constitutes a wage or premium pay and is governed by a three-year statute of

22    limitations."). The statute of limitations is extended to four years when a plaintiff also

23    pursues an action for restitution under the California Business and Professions Code

24    § 17200, *et seq*. as Plaintiff does.  *See Falk*, 237 Cal. App. 4th at 1462, n.12 (holding that

25    "actions for restitution and under Business and Professions Code section 17200 are

26    subject to a four-year statute of limitation"). Accordingly, the proposed class period for

27    the third cause of action is from **December 28, 2019 until the present**.

28

308023391v.5

45.    Defendants' records show that, during the proposed class period, the putative class members (based on Plaintiff's proposed class definition) worked approximately 416,708 workweeks from December 28, 2019 to February 14, 2024. (Uribe Declaration, ¶ 10.) Based on the allegations of the Complaint, if it is assumed that each potential class member is entitled to one hour of premium pay for every two-week period for the alleged non-provision of meal periods, the amount in controversy on this claim would equal no less than **$5,208,850.00** ($25.00/hour x 416,708 weeks/2-week periods.)[2]

46.    Defendants' estimate is very conservative.  For the above calculation, Defendants assume only one meal period violation for each two-week period, even though Plaintiff has alleged he was "consistently unable to take timely, off-duty, thirty-minute, uninterrupted first and second meal periods."  (Ex. A—Complaint, ¶ 112.)  In other words, if an employee worked 10 days during a two-week period, Defendant has calculated the amount in controversy based only on a single meal period violation during that period. *See Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice—or other similar language—and where the plaintiff offers no evidence rebutting this violation rate"); *Torrez v. Freedom Mortg., Corp.*, 2017 WL 2713400, at *3–5 (C.D. Cal. June 22, 2017) (where complaint alleged "FMC engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees within the state of California," the complaint "can reasonably be interpreted to imply nearly 100% violation rates"); *Feao v. UFP Riverside, LLC*, 2017 WL 2836207, at *5 (C.D. Cal. June 26, 2017) ("Plaintiff's allegations contain no qualifying words such as 'often' or 'sometimes' to suggest less than uniform violation that would preclude a 100 percent violation rate.").

---

[2] Plaintiff's hourly rate of pay during his employment was $25.00 (Uribe Declaration, ¶ 9), which was used for all calculations in this Notice of Removal.

14

### 2. The Fourth Cause Of Action For Unpaid Rest Period Premiums: The Amount In Controversy Exceeds $5,208,850.00 Based On One Violation Per Employee Per Bi-Weekly Pay Period.

46.     For Plaintiff's fourth cause of action, he alleges that "PLAINTIFF and the Class Members did not receive legally compliant, timely 10-minute rest periods for every four (4) hours worked or major fraction thereof." (Ex. A—Complaint, ¶ 122.)  According to the Complaint, "any purported rest periods were late, interrupted, cut short, on duty, and/or otherwise subject to DEFENDANTS' control due to the nature and constraints of Class Members' job duties, understaffing, and/or commentary from supervisors pressuring PLAINTIFF and Class Members to skip rest periods completely or otherwise take non-compliant rest periods." (*Id.*) Specifically, Plaintiff alleges "PLAINTIFF and the Class Members did not receive legally compliant first, second, or third rest periods as required by California law." (Ex. A—Complaint, ¶ 124.)  As a result, Plaintiff seeks "one hour of additional pay at the regular rate of compensation for each workday that a required rest period was not provided …." (Ex. A—Complaint, ¶ 126.)

47.     Under California law, "[e]very employer shall authorize and permit all employees to take rest periods, which . . . shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof." *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1028 (2012).  California Labor Code § 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely rest periods.  An employee is entitled to an additional hour's wages per day, for both a rest and meal period violation each day.  *Lyon*, 2010 WL 1753194 at *4.

48.     The statute of limitations for recovery for rest period premium pay under California Labor Code § 226.7 is three years.  *Murphy*, 40 Cal. 4th at 1099 ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations.").  The statute of limitations is extended to four years when a plaintiff also pursues an action for restitution under the California Business and Professions Code § 17200, *et seq. See Falk*, 237 Cal. App. 4th at 1462,

15

308023391v.5

n.12.  Accordingly, the proposed class period for the fourth cause of action is from **December 28, 2019 until the present**.

49.  Defendant IHGM's records show that, during the proposed class period, the putative class members (based on Plaintiff's proposed class definition) worked approximately 416,708 workweeks from December 28, 2019 to February 14, 2024. (Uribe Declaration, ¶ 10.)  Based on the allegations of the Complaint, if it is assumed that each potential class member is entitled to one hour of premium pay for every two-week period for the alleged non-provision of rest periods, the amount in controversy on this claim would equal no less than **$5,208,850.00** ($25.00/hour x 416,708 weeks/2-week periods.)

50.  Defendants' estimate is very conservative.  For the above calculation, Defendants assume only one rest period violation for each two-week period, even though Plaintiff has alleged that he "did not receive first, second, or third rest periods …."  (Ex. A—Complaint, ¶ 124.)  In other words, if an employee worked 10 days during a two-week period, Defendants have calculated the amount in controversy based only on a single rest period violation during that pay period. *See Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice—or other similar language—and where the plaintiff offers no evidence rebutting this violation rate"); *Torrez v. Freedom Mortg., Corp.*, 2017 WL 2713400, at *3–5 (C.D. Cal. June 22, 2017) (where complaint alleged "FMC engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees within the state of California," the complaint "can reasonably be interpreted to imply nearly 100% violation rates"); *Feao v. UFP Riverside, LLC*, 2017 WL 2836207, at *5 (C.D. Cal. June 26, 2017) ("Plaintiff's allegations contain no qualifying words such as 'often' or 'sometimes' to suggest less than uniform violation that would preclude a 100 percent violation rate.").

DEFENDANTS' NOTICE OF REMOVAL

308023391v.5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 3. The Fifth Cause Of Action For Failure to Furnish Accurate Itemized Wage Statements: The Amount In Controversy Exceeds $6,065,650.00.

51.     For Plaintiff's fifth cause of action, Plaintiff alleges that "the wage statements DEFENDANTS issued to PLAINTIFF and other Class Members failed and continue to fail to correctly set forth (a) the gross wages earned, in violation of Labor Code section 226(a)(1); (b) the total hours worked by the employee in violation of Labor Code section 226(a)(2); (c) the net wages earned, in violation of Labor Code section 226(a)(5); and (d) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee, in violation of Labor Code section 226(a)(9)." (Ex. A—Complaint, ¶ 129.)

52.     Plaintiff further alleges that "DEFENDANTS issued wage statements to PLAINTIFF and Class Members that violate Labor Code section 226(a)(8) by failing to list the correct name and/or address of the legal entity that is the employer" and violate Labor Code section 226(a)(6) by failing to "list the inclusive dates of the pay period for which the Class Member is being paid." (Ex. A—Complaint, ¶ 132.)

53.     As a result, Plaintiff seeks "to recover fifty dollars per employee for the initial pay period in which a Section 226 violation occurred and one hundred dollars per employee per violation for each subsequent pay period, not to exceed an aggregate penalty of four thousand dollars per employee." (Ex. A—Complaint, ¶ 139.)

54.     Labor Code § 226(e) provides a minimum of $50 for the initial violation as to each employee, and $100 for each further violation as to each employee, up to a maximum penalty of $4,000 per employee.  The statute of limitations for recovery of penalties under Labor Code § 226 is one year.  *Caliber Bodyworks, Inc. v. Sup. Ct*., 134 Cal. App. 4th 365, 376 (2005); Cal. Civ. Proc. Code § 340(a).  Because Plaintiff filed his Complaint on December 28, 2023, the statutory period for the claim under California Labor Code § 226 runs from **December 28, 2022 to the present**.

308023391v.5

55.    During the limitations period of December 28, 2022 to February 14, 2024 there are approximately 2,561 potential class members with 123,874 total weeks worked. (Uribe Declaration, ¶ 11.)  Defendants generally pay non-exempt employees on a bi-weekly basis, so at least 61,937 wage statements were issued to these employees (123,874/2) based on the number of weeks worked. (*Id*.) When including a $50 penalty for the initial wage statement and $100 for each subsequent wage statement (to a maximum of $4,000 per employee), the amount in controversy on this claim would equal no less than **$6,065,650.00** ([$100 x 59,376 pay periods (for subsequent wage statements)] + [$50 x 2,561 employees (for initial wage statements)).

### 4.    The Sixth Cause Of Action For Failure to Timely Pay Wages Due Upon Separation of Employment: The Amount In Controversy Exceeds $8,292,000.00.

56.    For Plaintiff's sixth cause of action, Plaintiff alleges Defendants "failed and continue to fail to timely pay final wages to PLAINTIFF and Class Members upon separation of employment in violation of Labor Code section 201-202." (Ex. A—Complaint, ¶ 145.) "Moreover, final paychecks once provided to PLAINTIFF and Class Members do not include all wages owed as they are devoid of, including but not limited to, all owed minimum wages, overtime wages, premium wages, vacation pay, and all owed sick leave and/or paid time off wages at the properly accrued rates." (*Id*.)

57.    Based on the allegations, Plaintiff seeks to recover "waiting time penalties of up to 30 days' pay, plus attorney's fees and costs …."  (Ex. A—Complaint, ¶ 146.)

58.    Under California Labor Code § 203, a discharged employee is entitled to penalties of up to 30 days' pay at his or her regular pay. *See* Cal. Lab. Code § 203(a) ("If an employer willfully fails to pay … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days").

59.    The statute of limitations period for California Labor Code § 203 penalties extends back three years from the date of filing of the complaint, or **December 28, 2020**.

18

*See Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1399 (2010) ("if an employer failed to timely pay final wages to an employee who quit or was fired, the employee would have had one year to sue for the section 203 penalties but, under Code of Civil Procedure section 338, subdivision (a) (Stats.1935, ch. 581, § 1, p. 1673), three years to sue for the unpaid final wages giving rise to the penalty").

60.    Here, during the three-year limitations period, between December 28, 2020 and February 14, 2024, there were approximately 1,382 potential class members whose employment ended. (Uribe Declaration, ¶ 12.)  The standard work day for nearly all of Defendants' non-exempt employees is eight hours. (*Id.*) If each potential class member is owed eight hours of pay per day for the maximum penalty of 30 days, the alleged amount in controversy for the claim of waiting time penalties would be approximately **$8,292,000.00.** [($25.00/hour x 8 hours x 30 days) x 1,382 potential class members].

61.    It is appropriate to use the maximum 30 days to calculate the amount in controversy for the waiting time penalties. *See, e.g.*, *Tajonar v. Echosphere, LLC*, 2015 WL 4064642, at *4-5 (S.D. Cal. July 2, 2015) (finding defendant's "calculations [we]re reasonable and consistent with [plaintiff's] own allegations" that each employee was entitled to the maximum thirty-day penalty); *Byrd v. Masonite Corp.*, 2016 WL 2593912, at *3 (C.D. Cal. May 5, 2016) ("[I]t is not unreasonable for [defendant] to assume that each employee would be entitled to the maximum wage penalty – thirty days – for waiting time violations.").

### 5.    Attorneys' Fees: The Amount In Controversy Exceeds $6,193,837.50.

62.    Plaintiff also seeks attorneys' fees.  (Ex. A—Complaint, ¶¶ 101, 108, 117, 126, 141, 146, 153, 159; Prayer For Relief.)  Requests for attorneys' fees must also be taken into account in ascertaining the amount in controversy.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees are to be included in amount in controversy, regardless of whether award is "mandatory or discretionary"); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010–11

DEFENDANTS' NOTICE OF REMOVAL

308023391v.5

(N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy.").

63.    A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy. *Longmire v. HMS Host USA, Inc.*, 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA.") (citing *Brady*, 243 F. Supp. 2d at 1010–11); *Muniz*, 2007 WL 1302504 at *2 (attorneys' fees "are also properly considered in ascertaining the amount in controversy" for purposes of removal under CAFA).

64.    The Ninth Circuit held that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414–15 (9th Cir. 2018) ("[T]he amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious."); *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403 (C.D. Cal. May 9, 2018) (holding that "unaccrued post-removal attorneys' fees can be factored into the amount in controversy" for CAFA jurisdiction).

65.    Indeed, the Ninth Circuit again very recently explicitly confirmed that "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy," including in the context of determining CAFA jurisdiction and as a "principle[] that appl[ies] in CAFA removal cases." *Arias*, 936 F.3d at 922.

20

66.     In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted.  *See, e.g.*, *Wheatley*, 2019 WL 688209, at \*6 (C.D. Cal. Feb. 19, 2019) (finding that an estimate of attorney's fees of 25% reasonable); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at \*3 (C.D. Cal. Nov. 1, 2018) ("[T]the 25% benchmark provides a non-speculative guidepost for assessing jurisdiction."); *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach"); *Wren v. RGIS Inventory Specialists*, 2011 U.S. Dist. LEXIS 38667 at \*78–84 (N.D. Cal. Apr. 1, 2011) (finding ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable in the case); *Cicero v. DirecTV, Inc.*, 2010 U.S. Dist. LEXIS 86920 at \*16–18 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable); *see also In re Quintas Secs. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting that in the class action settlement context the benchmark for setting attorneys' fees is 25 percent of the common fund).

67.     Even under the conservative benchmark of 25 percent of the total amount in controversy for Plaintiff's claims, attorneys' fees alone would be upward of **$6,193,837.50** in this case, which is 25% of the amount in controversy for the claims alleged in the Complaint and discussed above—$5,208,850.00 (rest period claim) + $5,208,850.00 (meal period claim) + $6,065,650.00 (wage statement claim) + $8,292,000.00 (timely wages payment upon termination claim).

**6.     The Total Aggregate Amount In Controversy Exceeds $5 Million.**

308023391v.5

68.    Although Defendants deny Plaintiff's allegations that he or the potential class are entitled to any relief for the above-mentioned claims, based on the foregoing calculations, the aggregate amount in controversy for the potential class for all asserted claims is approximately **$30,969,187.50**:

| Cause of Action | Amount in Controversy Based on the Allegations of the Complaint |
|---|---|
| Meal Break Claim | $5,208,850.00 (one violation per two-week period) |
| Rest Break Claim | $5,208,850.00 (one violation per two-week period) |
| Wage Statement Claim | $6,065,650.00 (based on 61,937 wage statements) |
| Timely Wages Payment Upon Termination Claim | $8,292,000.00 (based on 1,382 employees who were terminated at $25.00 per hour, eight hours per day, for 30 days) |
| Attorneys' Fees | $6,193,837.50 (based on 25% of the amount in controversy of $24,775,350.00, on the above claims) |
| **Total** | **$30,969,187.50** |

69.    Although Defendants deny Plaintiff's allegations that he or the potential class are entitled to any relief, based on Plaintiff's allegations and prayer for relief, and conservative estimates based on those allegations, the total amount in controversy far exceeds the $5,000,000 threshold set forth under 28 U.S.C. § 1332(d)(2) for removal jurisdiction.

70.    Because both minimal diversity of citizenship exists, and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2).  This action is therefore a proper one for removal to this Court pursuant to 28 U.S.C. § 1441(a).

## IV.    REMOVAL UNDER THE LABOR MANAGEMENT RELATIONS ACT

### A.    Preemption Under Section 301 Of The LMRA Establishes Federal Question Jurisdiction.

DEFENDANTS' NOTICE OF REMOVAL

308023391v.5

71.    Removal is proper where a federal court has original jurisdiction over an action brought in state court. 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending."). In this case, federal question jurisdiction arises out of the fact that Plaintiff's claims are preempted by Section 301 of the Labor Management Relations Act ("Section 301" and "LMRA"), 29 U.S.C. § 185.

72.    Pursuant to Section 301, "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties without regard to the amount in controversy or without regard to the citizenship of the parties." *Firestone v. Southern Cal. Gas Co.*, 219 F.3d 1063, 1065 (9th Cir. 2000), *reh'g* denied 281 F.3d 801 (9th Cir. 2002).

73.    A collective bargaining agreement ("CBA") is a contract "between an employer and a labor organization" under 28 U.S.C. § 1441(a), and Section 301 preempts all state-law claims "founded directly on rights created by collective-bargaining agreements." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987). Section 301 also "authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements." *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451 (1957).

74.    Here, throughout Plaintiff's employment, he and other proposed class members who worked for Defendant IHGM at the same hotel were subject to a CBA with the UNITE HERE! Local 30, AFL-CIO ("Local 30"). (Uribe Declaration, ¶ 14.)  The CBA explicitly provides Plaintiff and other proposed class members with wage rates, hours of work and shifts, and the overtime rate among other things.  (*See, e.g.*, Uribe Declaration, Ex. A—SECTION 8 – "WAGES;" SECTION 9 – "HOURS OF WORK AND SHIFTS;" SECTION 10 – "OVERTIME.")

DEFENDANTS' NOTICE OF REMOVAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

75.     It is immaterial that the CBA was not alleged in the operative unverified Complaint, because a plaintiff may not avoid federal jurisdiction preemption by artful pleadings.  That is no impediment to Defendants' right to remove this action to federal court. Under the "artful pleading" doctrine, a plaintiff may not avoid federal jurisdiction simply by pleading a claim that can be made only under federal law as a state law claim. See *Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468, 1472 (9th Cir. 1984), *overruled on other grounds by Allis-Chalmers*, 471 U.S. at 220 ("[E]mployees frequently attempt to avoid federal law by basing their complaint on state law, disclaiming any reliance on the provision of the collective bargaining agreement . . . In such cases the 'artful pleading' doctrine requires that the state law complaint be recharacterized as one arising under the collective bargaining agreement. The case may then be removed to federal court and adjudicated under the appropriate federal law."); *Newberry v. Pac. Racing Assoc.*, 854 F.2d 1142, 1146 (9th Cir. 1988) ("[T]he key to determining the scope of section 301 preemption is not based on how the complaint is framed, but whether the claims can be resolved only by referring to the terms of the bargaining agreement."); *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) ("The district court . . . properly looked beyond the face of the complaint to determine whether the contract claim was in fact a section 301 claim for breach of a collective bargaining agreement 'artfully pleaded' to avoid federal jurisdiction.").

**B.     Plaintiff's Overtime Wages Claim Is Preempted Because It Is "Created By The CBA Itself" Under The Two-Part Inquiry.**

76.     The Ninth Circuit has developed a two-part inquiry to determine whether the LMRA preempts a state law claim. See *Alaska Airlines, Inc. v. Schurke*, 898 F.3d 904, 920 (9th Cir. 2018) ("This circuit, however, has distilled the Supreme Court's . . . LMRA § 301 case law into a two-part inquiry into the nature of a plaintiff's claim."), *cert. denied*, 139 S. Ct. 1445 (2019).

77.     First, the court evaluates the "legal character" of the claim by asking "whether a particular right is grounded in a CBA" and "whether [the claim] seeks purely

DEFENDANTS' NOTICE OF REMOVAL

308023391v.5

to vindicate a right or duty created by the CBA itself." *Id.* at 921 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994)). "If a claim arises entirely from a right or duty of the CBA," it is preempted. *Id.*

78.     Second, "if a right is not grounded in a CBA," courts must determine "whether litigating the state law claim nonetheless requires interpretation of a CBA, such that resolving the entire claim in court threatens the proper role of grievance and arbitration." *Id.*

79.     Under the first part of the inquiry, the question is "whether the asserted cause of action involves a 'right [that] exists solely as a result of the CBA.'" *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019) (quoting *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016)). Under this test, a claim is preempted if it seeks "purely to vindicate a right or duty created by the CBA itself." *Schurke*, 898 F.3d at 921. The Court must proceed to the second step **only if** the claim seeks to vindicate a right not created by the CBA. See *Curtis*, 913 F.3d at 1153 (explaining if "the claim seek[s] 'to vindicate a right or duty created by the CBA itself … 'then the claim is preempted and [the] analysis ends there'") (internal citations omitted).

80.     Here**,** Plaintiff's Second Cause of Action is for "Failure to Pay Lawful Wages Including Overtime" based on Plaintiff's allegation that putative class members worked "overtime hours for which they were not compensated," that employees did not receive "twice [the] regular rate of pay for time worked beyond twelve (12) hours per workday and for time worked beyond eight (8) hours on the seventh consecutive day of work in a work week … in violation of California Labor Code section 510 ….", and the alleged failure to properly calculate the "regular rate of pay used to calculate the overtime rate of pay." (Ex. A—Complaint, ¶¶ 105, 107.) But California Labor Code § 514 **expressly preempts** the overtime requirements set forth in California Labor Code § 510:

> Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours

308023391v.5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

Cal. Lab. Code §514.

81.    The decision of the Ninth Circuit in *Curtis*, 913 F.3d at 1152, is directly on point. In *Curtis*, the Ninth Circuit held that an employee's claim for overtime pay under § 510 of the California Labor Code existed "solely as a result of the CBA," because the relevant statute governing overtime claims permitted "unionized employees to contract around [the statute's requirements]." *Curtis*, 913 F.3d at 1154-1155. Specifically, § 510(a) states that its requirements "do not apply to the payment of overtime compensation to an employee working pursuant to … a collective bargaining agreement" that complies with certain requirements. *Id*. at 1153 (quoting Cal. Lab. Code § 510). The Ninth Circuit therefore held that if employers were required to comply with the default rule regarding overtime compensation despite the existence of a qualifying CBA that created alternative arrangements, the statutory language above would be rendered superfluous. *Id*. at 1154. The plaintiff's right to overtime payments therefore existed solely as a result of the CBA, and as such his state law overtime claim was preempted:

> Section 514 in turn states that "Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Lab. Code § 514.
>
> **By its terms, therefore, the default definition of overtime and overtime rates in section 510 does not apply to an employee who is subject to qualifying CBA.** If Curtis's CBAs in this case meet the requirements of section 514, **Curtis's right to overtime "exists solely as a result of the CBA," and therefore is preempted under § 301.**

*Curtis*, 913 F.3d at 1153-1155 (emphasis added).

82.    Here, the CBA meets the requirements of California Labor Code § 514, and provides for the wages, hours of work, and working conditions of the covered employees. (Uribe Declaration, Ex. A—SECTION 8 — "WAGES," SECTION 9 – "HOURS OF WORK AND SHIFTS," SECTION 10 – "OVERTIME," SECTION 21 – "HOLIDAYS,"

308023391v.5

SCHEDULE A. "Employee Classification and Minimum Wages Scales," SECTION 17 – "MEAL PROVISIONS," ) The CBA expressly provides for premium wage rates for all overtime hours worked, requiring that "Employees shall be paid overtime at the rate of one and one-half (1-1/2) times the Employee's hourly wage[;] [a]ll work performed by an Employee in excess of eight (8) hours in a day, or in excess of forty (40) hours within the workweek, shall be paid for at the overtime rate of pay[;] Employees who are required to work seven (7) consecutive days during the workweek shall be paid at the overtime rate of pay for the seventh (7) consecutive shift. Human resources will make available a waiver of seventh day (7th) overtime for the convenience of the Employee[;] [o]vertime will not be pyramided with any other premium rate." (Uribe Declaration, Ex. A — SECTION 10(a)-(d), p. 8.)

83.    Further, the Defendant IHGM provides a "regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Lab. Code §514. Employees' minimum wage of employers with 26 employees or more in California was $15.00/Hour in 2022 and $15.50/Hour in 2023. (See "*Minimum Wages for Employers with 26 Employees or More*," Department of Industrial Relations, State of California, https://www.dir.ca.gov/dlse/faq_minimumwage.htm.). Here, Plaintiff's regularly hourly rate of pay throughout his employment with Defendants was $25.00, which was substantially higher than 30% more than the state minimum wage. (Uribe Declaration, ¶ 9.) Similarly, the average regular hourly rate of the proposed class members was $22.91, which was also substantially higher than 30% more than the state minimum wage. (*Id.*)

84.    Even if some potential class members do not meet the wage threshold under Labor Code § 514, this alone does not negate Section 301 preemption. It is important to note that not **all** proposed class members must meet the requirement of earning 30% more than the state minimum wage. *See, e.g.*, *Sachs v. Pankow Operating, Inc.*, 2022 WL 489696, at *6 (C.D. Cal. Feb. 16, 2022) (denying motion to remand; "[T]he vast majority of employee-categories in the CBA are assigned hourly rates of pay that greatly exceed §

27

514's requirement. The Court cannot accept the view that § 514 should not apply to Plaintiff and his fellow employees, when the only argument for the view is that a fraction of those covered by the CBA . . . may have temporarily been paid at a rate that barely missed § 514's requirement . . . .").

### C. This Court May Exercise Supplemental Jurisdiction Over Plaintiff's Other Claims under 28 U.S.C. 1367(a).

85.     If the Court determines that Plaintiff's overtime wages claim raises a federal question under Section 301 of the LMRA, the Court may exercise supplemental jurisdiction over Plaintiff's remaining claims pursuant to 28 U.S.C. section 1367(a), because the claims are part of the "same case and controversy." 28 U.S.C. §§ 1367(a) (providing that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution").

86.     Plaintiff's claims for unpaid minimum wages and liquidated damages in violation of California Labor Code §§ 1194 and 1194.2 are part of the "same case and controversy," because Plaintiff contends that "DEFENDANTS failed to compensate PLAINTIFF and Class Members for all hours worked, resulting in the underpayment of minimum and overtime wages." (Ex. A—Complaint, ¶ 23.) Plaintiff's allegation indicates his alleged overtime wages and minimum wages claims are raised under the **same** alleged conduct ("failed to compensate … for all hours worked) and calculations of the claims are directly related to each other. (*Id.*)

87.     Plaintiff's claim for failure to provide meal periods and rest periods in violation of California Labor Code §§ 512 and 226.7 are part of the "same case and controversy"—i.e., failure to pay wages—because Plaintiff alleges that Defendants did not pay premium wages based on the alleged non-provision of meal and rest breaks. (Ex. A—Complaint, ¶¶ 117, 126: " … PLAINTIFF and Class Members are entitled to one additional hour's pay at the employee's regular rate of compensation for each day a meal

DEFENDANTS' NOTICE OF REMOVAL

308023391v.5

period was missed ..." and "one hour of additional pay at the regular rate of compensation for each workday that a required rest period was not provided ....")

88.     Plaintiff's claims for failure to furnish accurate itemized wage statements in violation of California Labor Code § 226 are part of the "same case and controversy" as their preempted claims under California Labor Code § 510 (overtime), because Plaintiff's wage statement claims are derivative of his overtime claim. Plaintiff specifically alleges that the wage statements were inaccurate because Defendants "failed to pay regular and overtime wages for all hours worked" and "failed to display the proper overtime rate(s) for each hour of overtime worked...". (Ex. A—Complaint, ¶¶ 130.) Plaintiff also contends that Defendants "failed to correctly set forth" in their wage statements "the total hours worked by the employee ...." (Ex. A—Complaint, ¶129, 131.) This claim is derivative of Plaintiff's unpaid overtime claim and thus it is also preempted.

89.     Plaintiff's claims for failure to timely pay all wages due upon separation of agreement in violation of California Labor Code § 203 are part of the "same case and controversy" because Plaintiff contends that "DEFENDANTS failed ... to timely pay final wages to PLAINTIFF and Class Members ... including but not limited to ... overtime wages ...." (Ex. A—Complaint, ¶145.) Therefore, the alleged violations of California Labor Code § 510 are an inherent and central component of the alleged violations of California Labor Code § 203.

90.     Plaintiff's claims for failure to reimburse business expenses in violation of California Labor Code § 2802 are part of the "same case and controversy" because both the overtime wages claim and the business expenses claim stem from the same employment relationship between Plaintiff and Defendant IHGM and therefore from "a common nucleus of operative fact." (Ex. A—Complaint, ¶145, "DEFENDANTS' failure to provide PLAINTIFF and the Class Members with full reimbursement for all reasonable expenses associated with carrying out their duties required that PLAINTIFF and the Class Members subsidize and/or carry the burden of business expenses in violation of Labor Code section 2802;" *See Nishimoto v. Federman-Bachrach & Assoc.*,

903 F.2d 709, 714 (9th Cir. 1990) ("[A] district court may exercise pendent jurisdiction over state law claims arising from a [common] nucleus of operative fact.")

91.    Plaintiff's claims for violation of the Unfair Competition Law ("UCL") arise out of the "same case and controversy" because Plaintiff alleges that the "unfair conduct includes … failure to pay minimum and overtime wages by virtue of its illegal policies and practices …." (Ex. A—Complaint, ¶155.) Therefore, the alleged violations of the UCL are simply derivative of, and are based upon, alleged violations of California Labor Code § 510.

92.    Pursuant to U.S.C. § 1367(a), the Court has supplemental jurisdiction over Plaintiff's remaining causes of action, which are substantially related to the claim for unpaid overtime wages. The UCL claim encompasses every cause of action, which further supports that all causes of action arise from the "same case or controversy." *See Nishimoto*, 903 F.2d at 714. ("[A] district court may exercise pendent jurisdiction over state law claims arising from a [common] nucleus of operative fact."). Considerations of convenience, judicial economy, and fairness to the litigants strongly favor this Court exercising jurisdiction over all claims in the Complaint, and Plaintiff "would ordinarily be expected to try [all of her claims] in one judicial proceeding." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725-726 (1966).

## V.    VENUE

93.    Venue lies in the United States District Court for the Southern District of California, pursuant to 28 U.S.C. §§ 1391(a), 1441, and 84(c). This action originally was brought in the Superior Court of the State of California for the County of San Diego, which is located within the Southern District of California. 28 U.S.C. § 84(c). Therefore, venue is proper because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

## VI.    NOTICE TO STATE COURT AND TO PLAINTIFF

94.    Defendants will give prompt notice of the filing of this Notice of Removal to Plaintiff and to the Clerk of the Superior Court of the State of California for the County

1    of San Diego. A true and correct copy of this Notice of Removal will be promptly served

2    on Plaintiff and filed with the Clerk of the Superior Court of the State of California for

3    the County of San Diego as required under 28 U.S.C. § 1446(d).

4    **VII.   PRAYER FOR REMOVAL**

5         95.    WHEREFORE, Defendants pray that this civil action be removed from

6    Superior Court of the State of California for the County of San Diego to the United States

7    District Court for the Southern District of California.

8    DATED: February 15, 2024                    SEYFARTH SHAW LLP

9

10                                            By: _____

11                                                Eric E. Hill
                                                  Leo Q. Li
12                                                Ping Wang

13                                                Attorneys for Defendants
                                                  IHG MANAGEMENT (MARYLAND)
14                                                LLC; INTER-CONTINENTAL
                                                  HOTELS CORPORATION;
15                                                INTERCONTINENTAL HOTELS
                                                  GROUP RESOURCES, LLC

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF REMOVAL

308023391v.5